```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RAVEN LeDEATTE                                :
                    Plaintiff,
                                              :
         -against-                                        MEMORANDUM ORDER
                                              :           20 Civ. 10752 (ER) (GWG)

HORIZON MEDIA,                                :
                    Defendants.
                                              :
-------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United State Magistrate Judge**

Pro se plaintiff Raven LeDeatte brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"), alleging her former employer, Horizon Media, Inc. ("Horizon"), discriminated against her because of her race, color, and disability.  See Complaint, filed Dec. 16, 2020 (Docket # 1) ("Comp."), at 3-5.  Before the Court is defendants' motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").[1]  For the following reasons, defendants' motion is granted.[2]

I. BACKGROUND

---

[1] Motion to Compel Arbitration, filed Sept. 14, 2021 (Docket # 17) ("Def. Mot."); Memorandum of Law in Support, filed Sept. 14, 2021 (Docket # 18) ("Def. Mem."); Affidavit of Kelly Winkel in Support, filed Sept. 14, 2021 (Docket # 19) ("Winkel Aff."); Revised Exhibit C to Affidavit of Kelly Winkel, filed Sept. 14, 2021 (Docket # 20) ("Winkel Aff., Ex. C"); Order of September 16, 2021 (Docket # 21) ("Sept. 16 Order"); Letter from Todd H. Girshon, filed Oct. 26, 2021 (Docket # 22) ("Oct. 26 Letter"); Letter from Raven LeDeatte, filed Nov. 9, 2021 (Docket # 23) ("Nov. 9 Letter").

[2] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)."  Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases).

The following facts have not been controverted by LeDeatte:

Horizon "is a full-service media agency." Winkel Aff. ¶ 2. LeDeatte began working at Horizon in August 2019, following her graduation from college. See id. ¶¶ 4-8; Exhibit 1 to Comp., filed Dec. 16, 2020 (Docket # 1-1), at 1. During the onboarding process, LeDeatte signed Horizon's "Employment Understanding form," which stated that LeDeatte was "bound by Horizon Media's Mutual Agreement to Arbitrate Disputes unless [she] opt[ed]-out within 30 days of receiving the agreement." Winkel Aff. ¶¶ 5-7; Exhibit A to Winkel Aff., filed Sept. 14, 2021 (Docket # 19-1), at 3 ("Employment Understanding Form"). LeDeatte was separately provided a copy of the Mutual Agreement to Arbitrate Disputes, see Exhibit B to Winkel Aff., filed Sept. 14, 2021 (Docket # 19-2) ("Agreement"), and informed that the Agreement "would be effective immediately unless within 30 days of her receipt of it she choose to opt-out of [the Agreement] by executing [Horizon's] Arbitration Opt-Out Request Form . . . and returned it to Human Resources." Winkel Aff. ¶¶ 12-15. LeDeatte did not opt out of the Agreement. Id. ¶¶ 16-17.

The Agreement requires the arbitration of "any claim, dispute, or controversy arising out of or relating to [LeDeatte's] employment with [Horizon] or the termination of [LeDeatte's] employment with [Horizon.]" Agreement at 1. The Agreement covers

> claims for employment discrimination, harassment[,] or retaliation (whether on the basis of . . . race . . . disability . . . or any other protected category) under any and all federal, state, or local statutes . . . , including but not limited to Title VII of the Civil Rights Act of 1964 . . . [and] the Americans with Disabilities Act of 1990.

Id. The Agreement states that it "shall be governed by the Federal Arbitration Act," and "is the exclusive means of resolving any dispute between [LeDeatte] and [Horizon] covered by [the] Agreement." Id. at 1-2.

LeDeatte worked for Horizon until February 2020.  See Comp. at 3, 5.  LeDeatte asserts that during her employment she was subject to discrimination because of her race, color, and disability.  See id.  On February 14, 2020, LeDeatte went on medical leave for "emotional distress at work," which continued until February 25, 2020, when LeDeatte "was terminated while [she] was still out on medical leave."  Id.

LeDeatte filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 18, 2020, and she received an EEOC Notice of Right to Sue on September 16, 2020.  Id. at 6.  LeDeatte filed her complaint in this case three months later, on December 16, 2020.  See id.  The instant motion followed.  See Def. Mot.  LeDeatte's opposition to the motion consists of a two-sentence letter which states in relevant part that she "oppose[s]" Horizon's motion and "would prefer to be in the court of law."  Nov. 9 Letter.

## II. LEGAL STANDARD

The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (quotation omitted).  Section 2 of the FAA provides in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Section 4 of the FAA permits a party to obtain from a federal district court "an order directing that [an] arbitration proceed in the manner provided for" in an arbitration agreement.  9 U.S.C. § 4.  As the Second Circuit has held, the FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation."  Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (quotation omitted).

The Second Circuit has held that a court considering a motion to compel arbitration of a dispute first must

> determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quotation omitted). "[U]nder the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. at 171 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

When a motion to compel arbitration is brought, a "court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "If undisputed facts in the record require[] the issue of arbitrability to be resolved against the Plaintiff as a matter of law," the motion to compel arbitration must be granted. Id. If, however, the party opposing arbitration can show "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Id. (citing 9 U.S.C. § 4).

III. DISCUSSION

Applying the JLM Industries four-part test, see 387 F.3d at 169, we conclude that LeDeatte's claims are subject to arbitration.

A. Mutual Assent

First, we must consider whether LeDeatte and Horizon mutually assented to arbitrate LeDeatte's claims. See id. To do so, "we look to 'state contract law principles.'" Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 222 (2d Cir. 2019) (quoting Nicosia v.

Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)).  Under New York law, contract formation requires a "manifestation of mutual assent [that is] sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  Starke v. SquareTrade, Inc., 913 F.3d 279, 289 (2d Cir. 2019) (citing Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981)).  Here, LeDeatte signed the Employment Understanding Form and expressly agreed "to be bound by [the Agreement] unless [she] opt[ed]-out within 30 days of receiving the agreement."  Employment Understanding Form.  Despite receiving a copy of the Agreement and information on the opt-out process, LeDeatte did not opt-out.  See Winkel Aff. ¶¶ 4-17.  By signing the Employment Understanding Form and declining to opt out of the Agreement, LeDeatte manifested a clear and definite intention to be bound by the Agreement's terms.  See Manigault v. Macy's East, LLC, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order) (even without signed acknowledgement of arbitration program, employee's failure to opt out of mandatory arbitration program of which employee is on notice, combined with continued employment thereafter, "is sufficient to manifest assent" to arbitration).

    B.  Scope

Next, on the issue of scope, the Second Circuit has held:

> To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry.  First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  See Mehler v. Terminix Int'l Co., 205 F.3d 44, 49 (2d Cir. 2000); Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924, 927 (2d Cir. 1990); McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988).  Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  Rochdale Vill., Inc. v. Pub. Serv. Emps. Union, 605 F.2d 1290, 1295 (2d Cir. 1979); see also Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983).  Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.  See Cornell Univ. v.

UAW Local 2300, 942 F.2d 138, 140 (2d Cir. 1991).  Where the arbitration clause is broad, "there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it."  Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995).  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir 2001).

LeDeatte's claims are obviously subject to the Agreement.  The Agreement contains an "broad" clause covering "any claim, dispute, or controversy arising out of or relating to [LeDeatte's] employment with [Horizon] or the termination of [LeDeatte's] employment with [Horizon.]"  Agreement at 1.  But it also contains a narrower clause that explicitly covers the precise claims at issue in this case: that is, "claims for employment discrimination, harassment[,] or retaliation (whether on the basis of . . . race . . . disability . . . or any other protected category) under any and all federal, state, or local statutes . . ., including but not limited to Title VII of the Civil Rights Act of 1964 . . . [and] the Americans with Disabilities Act of 1990."  Id.  LeDeatte's claims are "on [their] face within the purview of [this] clause."  Rochdale Vill., Inc., 605 F.2d at 1295.

C. Congressional Intent

As to the third JLM Industries factor, see 387 F.3d at 169, we note that courts in this Circuit have repeatedly held that Congress did not intend that Title VII or ADA claims be nonarbitrable.  See Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1314 (11th Cir. 2002) (citing 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter.")); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 143 (1st Cir. 1998) ("[F]ar from evidencing an intention to preclude arbitration, [the ADA] can only be interpreted as favoring it.")); Gilbert v. Dell Techs., Inc., 415 F. Supp. 3d 389, 400 (S.D.N.Y.

2019) (collecting Title VII cases); see also Rollag v. Cowen Inc., 2021 WL 807210, at *5-7 (S.D.N.Y. Mar. 3, 2021) (NYSHRL discrimination claim held arbitrable because FAA preempts New York state law, N.Y. C.P.L.R. § 7151, which otherwise prohibits arbitration of discrimination claims).

### D. Stay Pending Arbitration

"[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). We have concluded that all of LeDeatte's claims must be arbitrated, and Horizon has requested a stay of this proceeding pending the arbitration. See Def. Mem. at 8. Accordingly, this case will be stayed pending the outcome of the arbitration proceeding.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration (Docket # 17) is granted. This action is stayed pending the conclusion of the arbitration. The parties are directed to report to the Court within 14 days of the arbitration's conclusion.

SO ORDERED.

Dated: November 23, 2021
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy Mailed by Chambers to Pro Se Plaintiff.